1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10

11   JO ANN GRAHAM,                        )      NO. EDCV 04-00817-MAN
                                           )
12                  Plaintiff,             )
                                           )      MEMORANDUM OPINION
13            v.                           )
                                           )      AND ORDER
14   JO ANNE B. BARNHART,                  )
     Commissioner of the                   )
15   Social Security Administration,       )
                                           )
16                  Defendant.             )
     _____)

17

18        Plaintiff filed a Complaint on July 14, 2004, seeking review of the

19   denial  by  the  Social  Security  Commissioner  ("Commissioner")  of

20   supplemental security income benefits ("SSI").  On August 26, 2004, the

21   parties filed a "Consent to Proceed Before a United States Magistrate

22   Judge," pursuant to 28 U.S.C. § 636(c).  The parties filed a Joint

23   Stipulation on April 15, 2005, in which:  Plaintiff seeks an order

24   reversing the Commissioner's decision denying benefits and either

25   directing the payment of benefits or a remand for further appropriate

26   proceedings; and Defendant requests that the Commissioner's decision be

27   affirmed.  The Court has taken the parties' Joint Stipulation under

28   submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for SSI on June 21, 2001. (Administrative Record ("A.R.") 73-76.) Plaintiff claims to be disabled due to seizure disorder, thyroid disorder, irritable bowel syndrome, depression, and wrist problems, with an onset date of June 26, 2001.[1] (A.R. 18, 73, 82.)   She has past relevant work experience as a real estate agent and court clerk.  (A.R. 18.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.   On May 21, 2003, Plaintiff, who was represented by counsel, appeared personally and testified at a hearing before Administrative Law Judge Robert K. Rogers, Jr. ("ALJ").  (A.R. 36-53.)   On August 6, 2003, the ALJ denied Plaintiff's request for benefits, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision.  (A.R. 18-22, 3-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his August 6, 2003 written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 2000.  (A.R. 21.)  The ALJ further found that Plaintiff has "severe" physical impairments, consisting of seizure disorder and marijuana abuse, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed

---

[1]      At the hearing, Plaintiff's onset date was amended from June 30, 1999, as set forth in her application, to June 26, 2001.  (A.R. 38.)

in, Appendix 1, Subpart P, Regulation No. 4.  (A.R. 19, 21.)  The ALJ found that "[Plaintiff's] allegations of disability and specific allegations regarding her problems with memory, forgetfulness and depression cannot be credited except when considering [Plaintiff's] ongoing marijuana abuse" and that "[a]llegations by [Plaintiff] and the witness regarding memory problems are credited in the context of her ongoing substance abuse."  (A.R. 21.)

The ALJ found that, "[a]bsent [Plaintiff's] marijuana abuse, [she] has no impairment based exertional limits on her ability to work," but concluded that, given her marijuana abuse, Plaintiff "cannot work at unprotected heights, around dangerous machinery, or drive" pursuant to 20 C.F.R. § 416.945.  (A.R. 22.)  The ALJ found that, if Plaintiff abuses marijuana, Plaintiff's residual functional capacity is further limited in that "she is not reliable and requires absences and breaks in excess of acceptable limits in a competitive job situation." (*Id.*)  In addition, the ALJ found that:  Plaintiff can perform her past relevant work, absent marijuana abuse (*id.*); however, if Plaintiff abuses marijuana, she cannot perform her past relevant work or any other work (*id.*).  Finding that Plaintiff's "[d]rug abuse is a contributing factor material to disability," the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.*)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The

3

Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Secretary of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id.* at 1041; *see also* <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Here, Plaintiff alleges two issues. <u>First</u>, Plaintiff contends that the ALJ failed to accord proper weight to her treating physicians' opinions. <u>Second</u>, Plaintiff contends that the ALJ failed to properly

1    evaluate the testimony provided by her son, Robert Kennedy. (Joint

2    Stip. at 3.)

3

4    **A.    The ALJ Improperly Rejected Two Medical Opinions Regarding**

5    **Plaintiff's Residual Functional Capacity.**

6

7        Ordinarily, the opinions of a treating physician should be given

8    great, if not controlling, weight. *See* Social Security Ruling 96-2p.

9    When the ALJ rejects the opinion of a treating physician, even if it is

10   contradicted, the ALJ may reject that opinion only by providing specific

11   and legitimate reasons for doing so, supported by substantial evidence

12   in the record. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); *see*

13   *also* <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by

14   rejecting the treating physicians' opinions and relying upon Social

15   Security examiners' opinions in finding that claimant's chronic fatigue

16   syndrome had not rendered her disabled). Broad and vague reasons will

17   not suffice for rejecting the treating physician's opinion. <u>McAllister</u>

18   <u>v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989). Furthermore, "[t]he

19   Commissioner must provide 'clear and convincing' reasons for rejecting

20   the uncontradicted opinion of an examining physician." <u>Lester</u>, 81 F.3d

21   at 830 (citing <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)).

22

23       In discussing the medical evidence regarding Plaintiff's claimed

24   mental impairment, the ALJ stated:

25

26       A review of the medical records includes a chart note dated

27       March 13, 2000, from a neurology department indicating

28       [Plaintiff] was depressed secondary to losing her spouse 3

                                        5

years ago.   The present exam revealed no acute distress and she was oriented and no other abnormalities were found.   The assessment was that her seizure disorder was controlled on her medication regimen (Exhibit 1F/3).   [Plaintiff] continued to be followed at the Arrowhead Regional Medical Center for symptoms related to menopause, hypothyroidism, seizures and depression and for which the prescription included soy milk and various medications.   However, when seen in follow-up on June 13, 2001, [Plaintiff] indicated that she was out of her medications and was seeking disability benefits.   Ramesh Mittal, M.D., provided a statement of the same date indicating that [Plaintiff] was disabled (Exhibit 2F/5, 6).

During August 2001 neurological examination, [Plaintiff] described having had 3 grand mal seizures in her entire life, all of which occurred in 1992.   Otherwise, she described "petit mal" seizures involving tingling of the fingertips, inability to respond, and the feeling "spaced out."   However, the neurological examination revealed normal concentration and attention, coordination, motor functioning, sensation, and reflexes with no evidence of ataxia or dysmetra (Exhibit 4F).   During August 2001 psychiatric examination [Plaintiff] indicated that she was not seeing a psychiatrist or taking any psychiatric medication, though she had been depressed for years and admitted to a history of marijuana usage and of having been arrested for perjury.   During the mental status exam she appeared mildly stressed but demonstrated no abnormal thought processes, was able to perform serial computation, was

fully oriented, was able to recall 3/3 items after 3 and 5 minutes and demonstrated adequate judgment.  It was noted that she had stopped working in 1999 after her contract with the country was not renewed.  The examiner concluded that [Plaintiff] was preoccupied about her physical problems and was not severely impaired from a psychiatric standpoint and had no severe mental restrictions (Exhibit 5F).

(A.R. 19.)

Plaintiff contends that the ALJ failed to accord proper weight to the opinion of Dr. Ramesh Mittal, her treating psychiatrist, who opined, in his May 19, 2003 report, that Plaintiff would be absent three or more times per month due to her impairment and treatment.  (Joint Stip. at 3).  In addition, Plaintiff contends the ALJ improperly rejected the May 19, 2003 physical residual functional capacity finding made by one of Plaintiff's treating doctors that Plaintiff has a maximum ability to stand and walk less than two hours and sit for about four hours in an eight-hour day, and that Plaintiff's impairments or treatment would cause her to be absent more than three times a month.  (Joint Stip. at 3-4.)

Defendant's argument is well-taken that the record does not support Plaintiff's contention that the May 19, 2003 physical residual functional capacity assessment was completed by a treating physician and, therefore, should be accorded "controlling weight."  Aside from asserting in her moving papers that this assessment was completed by a treating physician, Plaintiff has not identified this physician, and

this physician's signature is illegible.  Nevertheless, the ALJ erred by rejecting this assessment without any discussion.  *See, e.g.,* 20 C.F.R. § 404.1527(f)(2)(i)("administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled"); Social Security Ruling 96-6p ("[a]dministrative law judges and the Appeals Council may not ignore [opinions of State agency medical and psychological consultants and other program physicians regarding the nature and severity of an individuals impairments] and must explain the weight given to these opinions in their decisions").

Like Plaintiff's argument that the May 19, 2003 physical residual capacity assessment should be accorded "controlling weight," Plaintiff's argument that Dr. Mittal's report is "treating source" evidence, and thus, entitled to "controlling weight," is unavailing.  In Dr. Mittal's May 19, 2003 Work Capacity Evaluation (Mental), Dr. Mittal found that Plaintiff had "moderate" restrictions in six categories, "marked" restrictions in four categories, and "extreme" restrictions in two categories, and also noted that Plaintiff would need to be absent from work three or more days per month due to her impairments.  (A.R. 435-36.)  The record does not contain any other records from Dr. Mittal, and it is unclear whether his evaluation was based upon his examination of Plaintiff and/or her records or a past treatment relationship with Plaintiff.

However, regardless of whether Dr. Mittal is a treating, examining, or consultative physician, Dr. Mittal's report, which indicates extreme

8

limitations and that Plaintiff is disabled, as the ALJ noted (A.R. 435-36), must be considered.  Dr. Mittal's report is clearly at odds with the August 16, 2001 report of Dr. Reynaldo Abejuela, a psychiatrist who examined Plaintiff at the request of the Commissioner.  Dr. Abejuela's report indicates that Plaintiff "in not severe impaired" in concentration, persistence, and pace, nor in her ability to understand, carry out, and remember instructions.  (A.R. 166.)  Although the ALJ briefly noted the existence of Dr. Mittal's opinion, he did not provide any reason for his wholesale rejection of it in favor of Dr. Abejuela's opinion.

Defendant contends that the ALJ properly rejected Dr. Mittal's evaluation, because it is a conclusory check-off form without any objective support.  *See* Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996)(ALJ properly rejected doctors' psychological evaluations because they were contained in check-off forms and lacked any explanation of their bases); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)(ALJ may reject the opinion of either a treating or examining physician if that opinion is conclusory, brief and unsupported by clinical findings).  Nevertheless, a reviewing court cannot affirm the denial of benefits based on a reason not stated or finding not made by the ALJ, and Defendant's after-the-fact attempt to supply an acceptable basis for the ALJ's decision is unavailing.  *See, e.g.,* Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)(noting that a reviewing court is "constrained to review the reasons the ALJ asserts," and an ALJ's decision cannot be affirmed on the basis of evidence he did not discuss); Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)(an agency decision cannot be affirmed on the basis of a ground that the

agency did not invoke in making its decision); *see also* <u>Barbato v.</u>
<u>Commissioner of Social Sec. Admin.</u>, 923 F. Supp. 1273, 1276 n.2 (C.D.
Cal. 1996)(remand is appropriate when a decision does not adequately
explain how a decision was reached, "[a]nd that is so even if [the
Commissioner] can offer proper post hoc explanations for such
unexplained conclusions," for "the Commissioner's decision must stand or
fall with the reasons set forth in the ALJ's decision, as adopted by the
Appeals Council")(citation omitted).

Accordingly, the ALJ's failure to adequately address and properly
reject the May 19, 2003 Work Related Activities (Physical) assessment
and Dr. Mittal's May 19, 2003 Work Capacity Evaluation (Mental)
constitutes error.

**B.** **The ALJ Did Not Sufficiently Explain How He Used The Testimony**
**Provided By Plaintiff's Son In Assessing Plaintiff's Residual**
**Functional Capacity.**

"Lay testimony as to a claimant's *symptoms* is competent evidence
that an ALJ *must* take into account, unless he or she expressly
determines to disregard such testimony and *gives reasons germane to each*
*witness for doing so.*" <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir.
2001)(emphasis added). *See also* <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467
(9th Cir. 1996); <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993).
An ALJ may "properly discount lay testimony that conflict[s] with the
available medical evidence" (<u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395
(9th Cir. 1984)), particularly where, as in <u>Vincent</u>, "lay witnesses
[are] making medical *diagnoses*," as "[s]uch medical diagnoses are beyond

the competence of lay witnesses and therefore do not constitute competent evidence." *Nguyen*, 100 F.3d at 1467 (original emphasis). When, however, a lay witness testifies about a claimant's *symptoms*, which may affect the claimant's ability to work, such testimony *is* competent evidence and therefore *cannot* be disregarded without comment. *Id*.

In *Dodrill*, the Ninth Circuit explained the importance of lay testimony and why it must be considered in determining a claimant's disability:

> Although eyewitnesses have to rely to some extent on communications with the claimant in ascertaining whether she is disabled or malingering, we have held that friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." 20 C.F.R. § 404.1513(e)(2). *Id*.

> That the ALJ dismissed all the lay witness testimony solely because he found that the claimant was not credible suggests he may have been under the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms. . . . [T]hat is not the case. An eyewitness can often tell whether someone is

11

suffering or merely malingering.  While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight.

12 F.3d at 919.

In discussing the testimony of Plaintiff's son, the ALJ stated:

[Plaintiff's] son testified that he sees his mother 24 hours a day since she stays with him.  She has memory problems, forgets to take her pills, and forgets phone numbers and her friends.  She has pain in her knees, shoulders and stomach problems and bleeding problems lately.  She doesn't eat much. She was convicted of perjury when he was a child.  Her last marijuana use was a couple of months ago and involved very little, once or twice every month or two.

(A.R. 20.)  In evaluating the testimony of Plaintiff's son in finding Plaintiff's residual functional capacity, the ALJ stated: "[Plaintiff's] allegations of disability and specific allegations regarding her problems with memory, forgetfulness and depression cannot be credited except when considering [Plaintiff's] ongoing marijuana abuse.  Allegations by [Plaintiff] and the witness [her son] regarding memory problems are credited in the context of her ongoing substance abuse."  (A.R. 21.)

Plaintiff contends that the ALJ erred in his discussion of the

12

testimony at the May 21, 2003 hearing provided by Plaintiff's son,
Robert Kennedy.  Specifically, Plaintiff argues that:  "[t]he ALJ has
simply summarized the important testimony from the son without giving
germane reasons for rejecting this testimony.  Simply summarizing the
testimony does not give the reviewing court the ability to even
determine if the ALJ has accepted or rejected this critical testimony."
(Joint Stip. at 10.)

    Here, the ALJ accurately summarized the testimony provided by Mr.
Kennedy in his written decision.  Plaintiff's son testified that
Plaintiff uses marijuana "once or twice every month or two."  Plaintiff
testified that she uses marijuana far more frequently.  (*See* A.R. 41-42
-- Plaintiff's testimony that:  she last smoked marijuana "a couple
days" before the hearing; she smokes marijuana two or three times a week
depending on whether she is having pain in her shoulders or knees and
whether she can sleep; and she smokes the equivalent to five or six
cigarettes of marijuana a month; 47 -- Mr. Kennedy's testimony that:
he has not observed Plaintiff smoking marijuana for "a couple of
months";  he only sees her smoke "very little" marijuana; "probably
three or four hits when she does"; and she only smokes marijuana "maybe
once or twice a month [or] maybe twice every two months.")

    Although the ALJ specifically explained that he <u>credited</u> the
testimony of both Mr. Kennedy and Plaintiff regarding Plaintiff's memory
problems, at least in the context of her ongoing substance abuse, there
is a conflict between the testimony of Plaintiff and Mr. Kennedy as to
the frequency of her marijuana use.  It appears that the ALJ credited
both Plaintiff's and Mr. Kennedy's testimony that Plaintiff uses

marijuana, but credited Plaintiff's testimony and implicitly rejected Mr. Kennedy's testimony regarding the frequency of her drug use. The ALJ's failure to provide any reasons in his decision regarding the portions of Mr. Kennedy's testimony he rejected, namely, Mr. Kennedy's testimony regarding the infrequency of Plaintiff's marijuana use, constitutes error. Lewis, 236 F.3d at 511.

Furthermore, to the extent that the ALJ found that Plaintiff has certain limitations resulting from her drug use that would render her disabled (viz., "[w]hen marijuana abuse is factored into the equation, she has additional limits on her memory and reliability and because of which she would require unscheduled absences and breaks in excess of acceptable limits in a competitive job situation"), this finding does not appear to be based on substantial evidence. As the ALJ noted, Dr. Abejuela diagnosed Plaintiff with marijuana abuse and noted that Plaintiff reported a long history of marijuana use (A.R. 163. 165-66), and treating records from San Bernardino County reference Plaintiff's marijuana abuse (A.R. 203 – February 28, 2002 oral surgery clinic notes stating that Plaintiff reported using "social drugs (marijuana)"; 403 -- March 19, 1997 San Bernardino County physical assessment form noting that Plaintiff used "pot"). However, as the ALJ cites no medical evidence to support the conclusion that Plaintiff's continuing drug abuse results in limits on her memory and reliability, it appears that the ALJ may have improperly rendered his own medical judgment in reaching this conclusion. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975); 20 C.F.R. § 416.913(a)(1)(a decision regarding a claimant's medically determinable impairments should be based upon a determination made by an "acceptable medical source," such as a licensed

14

physician).

Under the Social Security Regulations, a claimant is not eligible to receive disability benefits if drug or alcohol addiction is a "contributing factor material to a determination of disability." 20 C.F.R. § 416.935. The "'key factor . . . in determining whether alcoholism or drug addiction is a contributing factor material to the determination of a disability'" is "whether an individual would still be found disabled if she stopped using alcohol or drugs." Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998)(citing to 20 C.F.R. § 404.1535(b)(1)). In determining whether a claimant's disability results from substance abuse, a two-step analysis is required. First, the ALJ must evaluate which of the claimant's physical and mental limitations would remain if the claimant refrained from drug and alcohol use. Second, the ALJ must determine whether the claimant's remaining limitations would be disabling. 20 C.F.R. § 416.935(b).

On remand, the ALJ should ensure that he complies with the above-noted standards in determining to what extent Plaintiff's limitations would remain if she refrained from substance abuse, and whether such limitations, if any, would be disabling. While the ultimate conclusion regarding Plaintiff's disability may not change, the ALJ must clarify his decision further by citing or developing the record, so that his conclusion as to the link between Plaintiff's substance abuse and her limitations resulting from such substance abuse is based on an opinion from an acceptable medical source. See Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993)(Commissioner has an affirmative duty to develop the record, even if the claimant is represented by counsel); 20 C.F.R.

§§ 404.1512(e), 416.912(e)(duty to re-contact treating physician); *see also* 20 C.F.R. §§ 404.1512a(b), 416.919a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity or insufficiency in the evidence).

Accordingly, on remand, the ALJ should clarify the portions of Mr. Kennedy's testimony he accepted and rejected, and the bases of his ultimate determination that, but for Plaintiff's continuing drug abuse, she could perform her past relevant work.

**C.    Remand Is Required.**

Here, remand is appropriate to allow the ALJ the opportunity to correct the above errors. *See* McAllister, 888 F.2d at 603 (remand appropriate to remedy defects in the record)

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

///

///

///

///

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 23, 2006

_____
/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

17

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                         **WESTERN DIVISION**

11

12   JO ANN GRAHAM,                    )  CASE NO.  EDCV 04-00817-MAN
                                       )
13                   Plaintiff,        )  JUDGMENT
                                       )
14          v.                         )
                                       )
15   JO ANNE B. BARNHART,              )
     Commissioner  of  the  Social     )
16   Security Administration,          )
                                       )
17                   Defendant.        )
     _____ )
18

19         Pursuant to the Court's Memorandum Opinion and Order,

20

21         IT IS ADJUDGED that the decision of the Commissioner of the Social

22   Security Administration is reversed, and the cause is remanded for

23   further necessary administrative proceedings, consistent with the

24   provisions of the Memorandum Opinion and Order.

25

26   DATED: March 23, 2006.

27

28                                                    /s/
                                         _____
                                              MARGARET A. NAGLE
                                       UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

19